UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LOCAL UNION 97, INTERNATIONAL
BROTHERHOOD OF ELECTRICAL WORKERS,
AFL-CIO,

                                Plaintiff,

    vs.                                                      5:20-CV-1249
                                                               (MAD/ML)
NIAGARA MOHAWK POWER CORPORATION,
*doing business as National Grid*,

                                Defendant.
_____

APPEARANCES:                                        OF COUNSEL:

**BLITMAN, KING LAW FIRM**               **BRIAN J. LaCLAIR, ESQ.**
Franklin Center
443 North Franklin Street, Suite 300
Syracuse, New York 13204
Attorneys for Plaintiff

**BOND SCHOENECK & KING, PLLC**      **HANNAH K. REDMOND, ESQ.**
One Lincoln Center                                 **ROBERT A. LaBERGE, ESQ.**
Syracuse, New York 13202
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On October 9, 2020, Plaintiff Local Union 97, International Brotherhood of Electrical Workers, AFL-CIO ("Local 97"), filed a complaint pursuant to 29 U.S.C. § 185(a) to compel arbitration with Defendant Niagara Mohawk Power Corporation, doing business as National Grid. *See* Dkt. No. 1. On April 5, 2021, Plaintiff Local 97 filed a motion to compel arbitration and Defendant National Grid filed a motion for summary judgment. *See* Dkt. Nos. 16, 18.

1

## II. BACKGROUND

Plaintiff Local 97 and Defendant National Grid are parties to a collective bargaining agreement ("CBA"). *See* Dkt. No. 16-4; Dkt. No. 18-2 at ¶ 3. The CBA contains a grievance and arbitration procedure to resolve disputes. *See* Dkt. No. 16-4 at 56. In relevant part, the CBA states, "Should Local Union 97, IBEW claim that a dispute or difference has arisen between the Company and Local Union 97, IBEW as to the meaning, application or operation of any provision of this Agreement, such dispute or difference shall be … settled in the following manner." *Id.*

The CBA proceeds to outline the path a grievance travels to reach arbitration. At step one, upon notification of the dispute, "a meeting will occur within 3 working days between the appropriate steward and/or Local Union 97, IBEW representative and supervisor." *Id*. If the parties fail to reach an agreement, Plaintiff Local 97 may request that the matter proceed to step two. *Id.* At step two, a meeting between "a member or members of the Grievance Committee designated by Local Union 97, IBEW and the Manager- Labor Relations or designee … will decide the matter and affix an answer within ten (10) working days." *Id*. "If resolution is not reached at Step 2, Local Union 97, IBEW may request in writing that this matter be heard at Step 3." *Id.* At step three, three members of Plaintiff Local 97 and three members of Defendant National Grid meet to attempt to reach an answer. *Id.* If a decision is still not reached, Plaintiff Local 97 may give written notice of "its intent to refer the dispute to arbitration[.]" *Id.* at 57.

On February 19, 2020, Plaintiff Local 97 filed a grievance, through steward Dan Machold, alleging that Defendant National Grid violated Article XX(6)(b) of the CBA. *See* Dkt. No. 16-5; Dkt. No. 16-3 at ¶ 10. Article XX(6)(b)(ii) states that, "At retirement, eligible retirees will continue to participate in medical plans identical to those that are offered to active Employees and as modified for active Employees subsequent to their retirement date." *See* Dkt. No. 16-4 at 43.

The grievance alleges that, "The Company is subjecting post-65 retirees to a greater out-of-pocket maximum spend than active employees in violation of the above cited article." Dkt. No. 16-5. The grievance seeks to "make all affected grievants whole." *Id.*

When presented with the grievance, Defendant National Grid stated that the issue was not arbitrable under the CBA. *See* Dkt. No. 16-3 at ¶¶ 12-13. On April 16, 2020, the Director of Labor and Employee Relations for Upstate New York, Michael Rubino, sent a letter to the Union stating that Defendant National Grid would not accept and number the notification of grievance because "it does not represent an appropriate grievance or is not arbitral under the labor contract for several different reasons. Among these reasons is the fact that the Union does not represent retirees and they are not covered by the labor contract." Dkt. No. 16-7.

Plaintiff Local 97 obtained authorization from a retiree to pursue its grievance, while maintaining it was not required to do so, and presented it to the company on September 30, 2020. *See* Dkt. No. 16-3 at ¶ 17. On October 6, 2020, Defendant National Grid responded, stating that the CBA does not cover retirees and Plaintiff Local 97 does not represent retirees, only employees. *See* Dkt. No. 18-2 at ¶ 18.

Plaintiff Local 97 now seeks to compel arbitration of its February 19, 2020 grievance. *See* Dkt. No. 16. Defendant National Grid has filed a motion for summary judgment. *See* Dkt. No. 18.

### III. DISCUSSION

**A.     Standard of Review**

When adjudicating a motion to compel, "the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). "If the party seeking arbitration has substantiated the entitlement by a showing of

evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995). "Accordingly, a court must grant a motion to compel arbitration if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law." *Schapp v. Mastec Servs. Co.*, No. 12-CV-0841, 2014 WL 1311937, *1 (N.D.N.Y. Mar. 31, 2014) (quoting *Ryan v. JPMorgan Chase & Co.*, No. 12 CV 4844, 2013 WL 646388, *2 (S.D.N.Y. Feb. 21, 2013) (citation omitted)). However, "[i]f there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun*, 316 F.3d at 175 (citing 9 U.S.C. § 4).

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citations omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court must be satisfied that

4

the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts"). Here, the parties agree that no material facts are in dispute. *See* Dkt. No. 8 at ¶ 9.

**B.    Standing**

"To demonstrate standing, a plaintiff must have 'alleged a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction.'" *Salazar v. Buono*, 559 U.S. 700, 711 (2010) (quoting *Horne v. Flores*, 557 U.S. 433, 445 (2009)) (emphasis omitted). A plaintiff bears the burden of establishing the three "irreducible constitutional minimum" elements of Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. ––, 136 S.Ct. 1540, 1547 (2016).

To establish an "injury in fact," a plaintiff must show that he or she suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical."'" *Lujan*, 504 U.S. at 560 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). To be "particularized," an injury must affect the plaintiff "in a personal and individual way," and to be "concrete" an injury "must be 'de facto'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548. As for the "actual or imminent" requirement, a plaintiff must allege a non-speculative injury. *See Lujan*, 504 U.S. at 583-84.

Defendant National Grid argues it is entitled to summary judgment because Plaintiff Local 97 lacks standing. *See* Dkt. No. 18-1 at 7-11. Defendant National Grid asserts that Plaintiff Local

97 did not make any out-of-pocket health insurance payments itself and that Plaintiff Local 97 does not represent retirees as a matter of law. *See id.* at 13 (citing *Allied Chem. & Alkali Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 168 (1971)). Therefore, Defendant contends, that Plaintiff Local 97 did not suffer any injury by retirees' higher out-of-pocket expenses. *Id.* at 16.

Plaintiff Local 97 agrees that it does not represent retirees under the National Labor Relations Act. Dkt. No. 16-1 at 11. The alleged injury, however, is not the allegation in the underlying grievance – that retirees are subject to higher out-of-pocket premiums – rather, it is Defendant National Grid's refusal to arbitrate that grievance. *See* Dkt. No. 1 at ¶ 39. Plaintiff is squarely not before this Court to enforce Article XX(6)(b)(ii), regarding retiree health benefits. The "case or controversy" is the enforcement of Article XXII, the grievance and arbitration procedure.

The alleged injury sustained by Plaintiff is clear. Plaintiff bargained to have this dispute settled by an arbitrator; Defendant refuses to arbitrate the dispute. "It is axiomatic that a party to an agreement has standing to sue a counter-party who breaches that agreement, even where some or all of the benefits of that contract accrue to a third party." *Frontier Comm'cns of N.Y., Inc. v. IBEW, AFL–CIO*, No. 07 Civ. 10327, 2008 WL 1991096, *3 (S.D.N.Y. May 6, 2008); *see also United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO/CLC v. Cookson Am., Inc.*, 710 F.3d 470, 475 (2d Cir. 2013) ("That this benefit accrues to third parties, namely, the retirees, does not change the fact that the Union has negotiated for the benefit and has incurred obligations in order to secure it."). Defendant's refusal to arbitrate, not its retiree healthcare plan, creates the injury.

Defendant National Grid confuses the enforcement of an arbitration clause with the enforcement of the substantive provision of the CBA that gives rise to the grievance. Courts have indeed expressed concern about unions representing the purported interests of retirees. *See, e.g, Allied Chem. & Alkali Workers of Am., Loc. Union No. 1 v. Pittsburgh Plate Glass Co., Chem. Div.*, 404 U.S. 157; *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO/CLC v. Cookson Am., Inc.*, 710 F.3d 470, 473 (2d Cir. 2013) (expressing concern where the union sought a declaration that the employer was obligated to pay retiree medical benefits pursuant to a facility closure agreement).

These issues, however, are addressed alongside the merits of the dispute, and are not related to constitutional standing in a Section 301(a) claim to enforce an arbitration agreement. "The courts … have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 568 577 (1960). Defendant's failure to arbitrate an allegedly arbitrable grievance is an injury-in-fact.

**C.   Arbitrability of the Grievance**

*1. Arbitrability Framework*

The path to compel arbitration in a collective bargaining dispute is well trodden. Section 301 of the Labor Management Relations Act provides that "[s]uits for violation of contracts between an employer and a labor organization … may be brought in any district court of the United States having jurisdiction of the parties[.]"  29 U.S.C. § 185(a). Section 301 grants district courts jurisdiction to compel arbitration under a collective bargaining agreement. *United Steelworkers*, 363 U.S. at 577.

"[W]hether parties have agreed to submi[t] a particular dispute to arbitration is typically an issue for judicial determination." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) (quotations omitted). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 648 (1986) (quotations omitted).

At the same time, however, there is a presumption of arbitrability for labor disputes where a validly formed arbitration agreement exists. *Granite Rock Co.*, 561 U.S. at 301; *United Steelworkers*, 363 U.S. at 576 (1960). "Because a collective bargaining agreement is not an ordinary contract, when there is an arbitration clause in a CBA, doubts about scope should be resolved in favor of coverage." *Goodrich Pump & Engine Control Sys., Inc. v. UAW & Amalgamated Local 405*, 723 Fed. Appx. 67, 69 (2d Cir. 2018) (internal citations omitted). "[T]here is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT & T Technologies, Inc.*, 475 U.S. at 650 (quoting *United Steelworkers*, 363 U.S. at 582–83). This presumption is "particularly applicable where the [arbitration] clause is broad." *Id*.

The Second Circuit has provided a "roadmap for determining whether particular disputes fall within the scope of an arbitration agreement." *Trustees of Laundry, Dry Cleaning Workers & Allied Indus. Health Fund, Workers United v. FDR Servs. Corp. of New York*, No. 17 CV 7145, 2019 WL 4081899, *2 (S.D.N.Y. Aug. 28, 2019). First, the court "should classify the particular clause as either broad or narrow." *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004) (quotation omitted). "Where the arbitration clause is broad, there arises a presumption

of arbitrability." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (internal quotation marks omitted). A broad arbitration clause is "presumptively applicable to disputes involving matters going beyond the interpretation or enforcement of particular provisions of the contract which contains the arbitration clause." *JLM Indus., Inc.*, 387 F.3d at 172. "So long as the arbitration clause is 'broad' and not explicitly limited to certain matters, it should be read to cover every dispute that it does not explicitly exclude." *Goodrich Pump & Engine Control Sys., Inc.*, 723 Fed. Appx. at 69.

Defendant National Grid argues that this well-established framework does not apply to Plaintiff's claim. First, Defendant National Grid seeks to apply the "clear and unmistakable" standard used to determine the arbitrability of arbitrability. Dkt. No. 20 at 7, 12; Dkt. No. 26 at 3 n.5, 5. But Plaintiff has agreed that federal court is the proper forum for the determination of arbitrability – it filed this action in federal court for that very purpose. *See* Dkt. No. 1. "Because neither party argues that the arbitrator should decide th[e arbitrability] question, there is no need to apply the rule requiring 'clear and unmistakable evidence' of an agreement to arbitrate arbitrability." *Granite Rock Co.*, 561 U.S. at 301, n.5.

Second, Defendant National Grid latches onto the requirement that "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*," *Granite Rock Co.*, 561 U.S. at 297 (emphasis in original), to argue that the presumption of arbitrability no longer applies. *See* Dkt. No. 21 at 4; Dkt. No. 26 at 7. *Granite Rock*, however, stands for the opposite proposition: determining whether "the parties agreed to arbitrate *that dispute*" is exactly when a court applies the presumption of arbitrability. The Court stated:

> Our cases invoking the federal policy favoring arbitration of
> commercial and labor disputes apply the same framework. They

9

> recognize that, except where the parties clearly and unmistakably provide otherwise it is the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning a particular matter. They then discharge this duty by: (1) applying the presumption of arbitrability only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand; and (2) adhering to the presumption and ordering arbitration only where the presumption is not rebutted.

*Id*. at 301 (citations and quotations omitted).

Defendant National Grid further argues that the presumption should not apply here because the dispute involves retirees and the CBA only applies to employees. In support, the Defendant relies on cases brought by retirees. *Fletcher v. Honeywell Int'l, Inc.*, 207 F. Supp. 3d 793 (S.D. Ohio 2016); *Cooper v. Honeywell Int'l, Inc.*, 220 F. Supp. 3d 850 (S.D. Ohio 2016). The court in these cases did not apply the presumption of arbitrability because it found no valid arbitration agreement between the parties, because retirees are not employees and were not a party to the CBA. Here, however, there is no dispute that a validly formed arbitration agreement between Plaintiff and Defendant exists. *See* Dkt. No. at ¶ 3. Accordingly, the well-settled arbitrability framework, reaffirmed in *Granite Rock*, applies here.

### 2. Arbitrability

First, as discussed above, the Court must determine whether the arbitration clause is broad or narrow. *JLM Indus., Inc.*, 387 F.3d at 169. The arbitration clause applies "[s]hould Local Union 97, IBEW claim that a dispute or difference has arisen between the Company and Local Union 97, IBEW as to the meaning, application or operation of any provision of this Agreement." Dkt. No. 16-4 at 56. The arbitration clause is broad.

"Perhaps the most telling clue" of a broad arbitration clause is "the expansiveness of the arbitration clause's language." *Ji Dong Cheng v. HSBC Bank USA, N.A.*, 467 F. Supp. 3d 46, 51

(E.D.N.Y. 2020).  "Phrases like 'any claim or controversy arising out of or relating to this agreement' or 'all differences arising between the parties to this agreement as to interpretation, application or performance' are classic examples of broad clauses."  *Id*. (citations and alterations omitted); s*ee also Keyes v. Ayco Co., L.P.*, No. 1:17CV00955, 2018 WL 6674292, *7 (N.D.N.Y. Dec. 19, 2018) (finding a broad arbitration clause where "the parties mutually agreed that they 'shall' arbitrate 'any dispute, controversy or claim between the Partner and the Firm ... relating to or arising out of Partner's employment with the firm or otherwise concerning any rights, obligations or other aspects' of her employment'"); *Sheet Metal Workers' Nat. Pension Fund v. Maximum Metal Manufacturers Inc.*, No. 13 CIV. 7741, 2015 WL 4935116, *5 (S.D.N.Y. Aug. 18, 2015) ("The operative text here—embracing 'any and all ... disputes ... arising out of or relating to'—makes this a quintessentially broad arbitration clause").

      Here, the arbitration clause's reference to "the meaning, application or operation of *any* provision of this Agreement" is a "classic example" of a broad clause.  Dkt. No. 16-4 at 56 (emphasis added); *Ji Dong Cheng*, 467 F. Supp. 3d at 51.  Moreover, the arbitration clause may be invoked *should* Plaintiff Local 97 "*claim* that a dispute or difference has arisen[.]"  Dkt. No. 16-4 at 56 (emphasis added).  Rather than delegate to arbitration disputes or differences, the parties have agreed to arbitrate claims by Plaintiff Local 97 of a dispute or difference of any provision.  The arbitration clause, therefore, is particularly broad.

      Defendant National Grid argues that the arbitration clause is not "classically broad" because the grievance and arbitration procedure makes numerous references to "Employees."  Dkt. No. 18-1 at 14.  Defendant National Grid argues that a grievance may only be submitted by an "aggrieved Employee or the Employee's steward," and retirees are not employees.  *See id*. at 15.  Moreover, once the grievance is received, "the Supervisor will sign and date the grievance

11

record." *Id.* at 17. Because retirees do not have supervisors, Defendant asserts they cannot comply with the grievance and arbitration procedures of the CBA, thereby excluding the arbitrability of grievances related to retiree health benefits. *Id.*

Defendant is mistaken that the use of the word "Employee" transforms a broad arbitration clause into a narrow one. The arbitration clause applies to "the meaning, application or operation of *any* provision of this Agreement," which is quintessentially broad language. The use of "Employee," at best, creates an ambiguity as to the coverage of this particular dispute. It does not shrink the size of the arbitration clause. Instead, such a dispute over whether a certain grievance is within the purview of a broad arbitration clause is exactly when the presumption of arbitrability applies. Because the arbitration clause is broad, Defendant National Grid must rebut the presumption with evidence of that the dispute was "explicitly exclude[d]" from the arbitration procedure. *Goodrich Pump & Engine Control Sys., Inc.*, 723 Fed. Appx. at 69. There is no explicit exclusion of disputes over Article XX(6)(b) or generally related to retiree benefits.

More fundamentally, Defendant National Grid's argument that retirees cannot bring grievances is unconvincing because a retiree did not bring the grievance, Plaintiff Local 97 initiated the grievance itself. *See* Dkt. No. 16-5. Alternatively, Defendant argues that Plaintiff Local 97 cannot bring a grievance on behalf of retirees. Again, however, Plaintiff Local 97 is not bringing the grievance on behalf of retirees, it is bringing it on behalf of itself. The allegation in the grievance that "The Company is subjecting post-65 retirees" to greater healthcare costs does not necessarily mean that Plaintiff filed the grievance on behalf of post-65 retirees, despite Defendant's claim.

Instead, the grievance is brought on behalf of Plaintiff Local 97 because it alleges a breach of the CBA, depriving Plaintiff of the benefit of its bargain. *Frontier Comm'cns of N.Y., Inc.*,

2008 WL 1991096, at *3; *Cookson Am., Inc.*, 710 F.3d at 475 ("Where employers have undertaken such contractual obligations, accepted contract principles indicate that a union has a legitimate interest in protecting the rights of the retirees and is entitled to seek enforcement of the applicable contract provisions"). Precedent stating that the unions do not represent retirees under the National Labor Relations Act is wholly irrelevant to the question before the Court: whether the parties agreed to arbitrate this dispute. The Court finds that they did.

## IV. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion to compel arbitration (Dkt. No. 16) is **GRANTED**; and the Court further

**ORDERS** that Defendant's motion for summary judgment (Dkt. No. 18) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 25, 2021
 Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge